UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDDIE A. WILLIAMS,

       Petitioner,

                                        CASE NO. 2:08-CV-10563
v.                                JUDGE GERALD E. ROSEN
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

       Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

      1.      Petitioner Freddie A. Williams is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

      2.      On November 21, 2003, petitioner was convicted of conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a, .529; first degree home invasion, MICH. COMP. LAWS § 750.110a(2); assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and possession of a firearm during a felony, MICH. COMP. LAWS § 750.224f, following a jury trial in the Saginaw

---

[1]By Order entered this date, Greg McQuiggin has been substituted in place of Nick Ludwick as the proper respondent in this action.

County Circuit Court. On January 5, 2004, he was sentenced as an habitual offender, third offense, MICH. COMP. LAWS § 769.11, to concurrent terms of 20-40 years' imprisonment on the conspiracy conviction, 10-40 years' imprisonment on the home invasion conviction, 25-50 years' imprisonment on the assault with intent to rob conviction, and 2-10 years' imprisonment on the felon-in-possession conviction. He was also sentenced to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. DID THE TRIAL COURT ABUSE ITS DISCRETION BY SUSTAINING PLAINTIFF'S OBJECTION TO THE INTRODUCTION OF AN OUT-OF-COURT STATEMENT BY CODEFENDANT BARKER THAT DEFENDANT HAD NOT BEEN WITH HIM AT THE BREAKIN [sic] AT THE WILLIAMS HOME?
>
> II. DID THE SENTENCING COURT ERR BY ORDERING HIS FELONY-FIREARM SENTENCE TO BE SERVED CONSECUTIVELY WITH SENTENCES OTHER THAN HIS SENTENCE FOR THE HOME INVASION 1ST?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Williams*, No. 253299, 2005 WL 562808 (Mich. Ct. App. Mar. 10, 2005) (per curiam).

4. Petitioner, proceeding *pro se*, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Williams*, 474 Mich. 903, 705 N.W.2d 134 (2005).

5. On October 8, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims (as set forth in his appellate brief in that proceeding):

> I. DID THE TRIAL COURT DEPRIVE THE DEFENDANT OF HIS STATE

AND FEDERAL DUE PROCESS RIGHTS, WHEN IT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO QUASH THE INFORMATION?

II. MUST DEFENDANT'S CONVICTIONS FOR CONSPIRACY TO COMMIT ARMED ROBBERY, FIRST DEGREE HOME INVASION, ASSAULT WITH INTENT TO ROB WHILE ARMED, POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, AND POSSESSION OF A FIREARM BY A FELONY BE REVERSED AND SET ASIDE, WHERE THE PROSECUTION FAILED TO PRESENT EVIDENCE BEYOND A REASONABLE DOUBT, AS TO EACH ELEMENT OF EACH OFFENSE TO SUSTAIN THE CONVICTIONS?

III. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL?

IV. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS STATE AND FEDERAL DUE PROCESS RIGHTS TO A FAIR TRIAL, WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING HIS MOTION TO SEVER CODEFENDANTS AND DENIED HIS MOTION FOR A MISTRIAL?

V. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO PURSUE INDEPENDENT FORENSIC TESTING ON CRUCIAL STATE EVIDENCE?

VI. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO INVESTIGATE, INTERVIEW, AND CALL CRUCIAL DEFENSE WITNESSES AT TRIAL?

VII. DID THE TRIAL COURT DEPRIVE DEFENDANT WILLIAMS OF HIS STATE AND FEDERAL DUE PROCESS RIGHTS, WHERE THE COURT ABUSED ITS DISCRETION IN DENYING HIS MOTION FOR A MISTRIAL, WHERE THE JURORS['] VERDICT WAS INCONSISTENT?

VIII. DID THE TRIAL COURT DEPRIVE DEFENDANT WILLIAMS OF HIS STATE AND FEDERAL DUE PROCESS RIGHTS TO A FAIR TRIAL, WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S REQUEST TO ADMIT TAPE RECORDINGS CRUCIAL TO HIS DEFENSE, THUS DEPRIVED [sic] DEFENDANT OF HIS RIGHT TO PRESENT A DEFENSE?

IX. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS STATE AND FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL BY THE CUMULATIVE EFFECT OF MULTIPLE ERRORS?

X. WAS DEFENDANT WILLIAMS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, WHERE COUNSEL FAILED TO INVESTIGATE, RESEARCH AND RAISE POTENTIALLY MERITORIOUS ISSUES ON APPEAL OF RIGHT, AND DOES DEFENDANT ME[E]T THE REQUIREMENTS OF MCR 6.508(D) ET. SEQ., FOR GRANTING RELIEF FROM JUDGMENT?

On October 23, 2006, the trial court denied petitioner's motion for relief from judgment concluding that petitioner failed to establish that his appellate counsel was constitutionally ineffective, and therefore that he could not establish good cause to excuse his failure to raise the claims earlier as required by MICH. CT. R. 6.508(D)(3). *See People v. Williams*, No. 02-021184-FH-2 (Saginaw County, Mich., Cir. Ct. Oct. 23, 2006). The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Williams*, No. 277631 (Mich. Ct. App. Oct. 23, 2007). Although petitioner attempted to appeal, his application was rejected by the Michigan Supreme Court as untimely. *See* Aff. of Corbin Davis, dated 8/12/08.

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 7, 2008. As grounds for the writ of habeas corpus, he raises the ten claims that he raised in his motion for relief from judgment.

7. Respondent filed his answer on August 29, 2008. He contends that petitioner's claims are barred by petitioner's procedural default in the state courts.

8. Petitioner filed a reply to respondent's answer on October 17, 2008.

B. *Factual Background Underlying Petitioner's Conviction*

4

Petitioner's conviction arises from the robbery of several victims inside a home on December 14, 2001. Petitioner was tried with his codefendants David Barker and Ronald Johnson. Prior to trial, codefendant Johnson filed a motion for severance, joined in by petitioner. Johnson argued that a separate trial was necessary because of an incriminating statement made by Barker. The trial court denied the motion for severance. The evidence adduced at trial was accurately summarized in the prosecutor's brief in the Michigan Court of Appeals:

> The evidence revealed that in the early morning hours of December 14, 2001, Sherry Williams was at her home located at 2311 Hazelwood in the City of Saginaw. Sherry Williams' daughter, Lakenya and Lakenya's 4-year-old son, were with her in a bedroom watching a movie. (T III 52-54; T V 6-10) Sherry's son, Terrence, and a friend Antoine Hampton were in a bedroom behind the garage on the other side of the breezeway from the main part of the house. (T IV 7-9; Ex 26)
> Shortly after midnight, three men broke into the Williams' home by kicking in a door to the kitchen that came off the breezeway that connected to the home's garage. (T V 10-11) All three men were black and wore dark clothes. One wore a black ski mask. One, who had braided hair, wore a red bandana/scarf, brandished a large handgun, and demanded money. One wore a beige or tan bandana/scarf, brandished a small handgun, and demanded money. (T III 54-60, 65, 73, 77-78; T V 9-17, 24-26, 58-61; Ex 26)
> Sherry ran into a bathroom[,] got on her knees and started praying. Sherry was dragged by her hair from the bathroom into the living room. Lakenya and her son were also directed into the living room. The masked men pointed guns at the two women and the child. They demanded to know where the money was, asked if there were any drugs in the house and asked for Terrence.
> While the beige scarved man stood by, the three victims and the other two men searched the house. (T III 57-60, 85-86; T V 12-18). The beige scar[ved] man stated several times, "I should kill you all." After searching the house and finding no money, the three men stood in the breezeway. Sherry and Lakenya heard the statement, "go back and finish them off." (T III 60-61, 64; T V 18-19, 52-54) The beige scarved man came back inside still holding a gun, looked at them, and said he "should have killed" them. He then left again. (T III 61) Sherry's sone Terrence had meanwhile called the police from his cell phone. (T V 39)
> As the beige masked gunman walked from the victim's residence, Officer Foerster approached and observed him with the handgun, tackled and arrested him. Defendant Barker was revealed to be the gunman with the beige or tan scarf around his face. (T III 61-63, 66, 108-109, 113-117; T IV 15-16; T V 19-20) After Defendant Barker was tackled, a small, loaded revolver – .22 caliber was seized from underneath him. (T IV 15-17, 51).

5

> As officers initially responded to the crime scene, they observed two people, who appeared to be black males, run from the scene at 2311 Hazelwood, through an adjacent lot to the west at 2312 Collingwood. (T III 118-120, 126, 140; T IV 9-13). Officer Hernandez arrived in the area to assist other officers and saw two people near a garage on Maplewood who then ran across Morris Street. (T IV 52-56, 68-70) Hazelwood, Collingwood, and Maplewood run parallel to each other in that order; Morris Street runs perpendicular to all three of those streets. (Ex 1; T IV 52-55)
>
> Upon searching the area near the scene, officers found a black ski mask near footprints coming from the crime scene, in the lot on Collingwood adjacent to the crime scene. (T III 118-119). At 2424 Maplewood, officers found a black sweatshirt and coat, near the garage, was well as two red bandanas wrapped around a .357 pistol with five live rounds. (T III 173-178; T IV 59-63, 71-72)
>
> An officer found Defendant Johnson, a black male, hiding on the ground at 2530 Maplewood. (T IV 57-58, 151) Another officer found Defendant Williams, a black male, hiding in the bushes at 2418 Morris. (T IV 56, 116-118) A search of the rest of the block did not reveal any additional persons out or hiding in the area. (T IV 58, 150-152)
>
> The shoes worn by Defendants Johnson and Williams were seized and submitted to the crime laboratory. (T V 73-77) Expert laboratory scientist, David Stephens, examined the shoes and compared them to prints found at the scene and areas where the evidence was found and determined that:
>> –Defendant Johnson's shoes had a similar size and pattern to a set of footprints found at 2312 Collingwood;
>> –Defendant Williams' shoes had a similar size and pattern to other footprints at 2312 Collingwood and at 2424 Maplewood. (T VII 11-29, 43)
>
> Examination of hairs from inside the ski mask revealed that the hairs were similar in all microscopic characteristics examined to the known head hair samples from Defendant Johnson and therefore could have come from him. (T VII 48-49) DNA testing revealed:
>> –a statistical match to Defendant Johnson's DNA on the black hooded-sweatshirt found at 2424 Maplewood; and
>> –a statistical match to Defendant Williams' DNA on one red bandana found at 2424 Maplewood. (T VII 30-36, 91-96, 102-113).

Pl.-Appellee's Br. on Appeal, in *People v. Williams*, No. 253299 (Mich. Ct. App.), at 2-5. Petitioner testified on his own behalf, and denied any involvement in the crimes. He also presented the testimony of his brother, who provided a partial alibi. Following closing arguments and deliberations, the jury found petitioner guilty as charged of conspiracy to commit armed robbery, first degree home invasion, assault with intent to rob while armed, possession of a firearm during

6

the commission of a felony, and felon-in-possession of a firearm. The jury acquitted petitioner of a sixth charge, carrying a dangerous weapon with unlawful intent. Petitioner's codefendants were convicted of each of the six charges.

C.     *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts. The Court should agree.

   1.     *Default*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented each of his ten habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that

7

the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The Michigan Court of Appeals rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)," but did not expressly identify one of the procedural default subdivisions of Rule 6.508(D). The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to establish a procedural default where the trial court rejected petitioner's claims on the merits. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). Here, however, the trial court expressly relied on Rule 6.508(D)(3), which is a firmly established procedural rule barring claims which could have been, but were not, raised on direct appeal. Regardless of the validity of the *Abela* line of cases, the district judges applying these conflicting decisions have repeatedly emphasized that *Abela* has no application where the trial court expressly invokes the procedural rule set forth in Rule 6.508(D)(3). *See, e.g.*, *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, at *9 (E.D. Mich. May 11, 2009) (Edmunds, J.); *Al-Dilaimi v. Berghuis*, No. 05-CV-71003, 2009 WL 1856237, at *9 (E.D. Mich. June 29, 2009) (Hood, J.); *Benton v. Booker*, No. 06-11004, 2008 WL 2508762, at *5 (E.D. Mich. June 23, 2008) (Battani, J., adopting Report of Komives, M.J.); *Davis v. Jones*, No. 1:04-cv-294, 2007 WL 2873041, at *2 (W.D. Mich. Sept. 26, 2007).

Petitioner's claims are also defaulted for a second reason, namely, his failure to timely appeal the court of appeals's decision on his motion for relief from judgment to the Michigan Supreme Court. His attempted appeal was returned without filing for violating the 56-day time limit set forth in MICH. CT. R. 7.302(C)(2). Petitioner's failure to file his appeal within the 56-day time limit constitutes a separate procedural default. *See Kinney v. Ludwick*, No. 08-10335, 2010 WL 446172, at *6 (E.D. Mich. Jan. 28, 2010) (Friedman, J.); *Swathwood v. Lafler*, No. 04-CV-72251, 2009 WL 322041, at *5 (E.D. Mich. Feb. 10, 2009) (Rosen, J.). Attempting to overcome this default, petitioner asserts that he did, in fact, file his appeal on December 18, 2007, the last day of the 56-day period in which to file his appeal. However, petitioner offers no evidence to rebut the Clerk's assertion that the appeal was not received by the Michigan Supreme Court until December 20, 2007. To the extent that plaintiff is attempting to assert the prison mailbox rule, it does not overcome his default. In *Houston v. Lack*, 487 U.S. 266, 270 (1988), the Supreme Court held that, under Rule 4 of the Federal Rules of Appellate Procedure, a *pro se* prisoner's appeal should be deemed "filed" on the date it is given to prison officials for mailing. *See Houston*, 487 U.S. at 275-77. The rule of *Houston* has since been extended to other filings by prisoners. *See, e.g.*, *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723-24 (N.D. Ohio 1998) (discussing cases). However, *Houston* and the subsequent cases extending the rationale of *Houston* were decided as matters of interpretation of various federal rules and statutes. The rule of *Houston* does not rest on constitutional grounds, and thus a state is not required to adopt the prison "mailbox rule." *See Adams v. LeMaster*, 223 F.3d 1177, 1182 n.4 (10th Cir. 2000). The Michigan courts have expressly rejected the mailbox rule of *Houston*. *See Moore v. Michigan Department of Corrections*, 615 N.W.2d 212, 212-13 (Mich. 2000) (Corrigan, J., concurring in denial of leave to appeal); *Walker-Bey v. Department of Corrections*, 222 Mich.

App. 605, 608-11, 564 N.W.2d 171, 172-73 (1997).

      2.      *Cause and Prejudice*

Notwithstanding petitioner's procedural defaults, petitioner can still have his claims considered on the merits if he can establish cause for, and prejudice attributable to, his defaults in the state courts. With respect to petitioner's default under Rule 6.508(D)(3), petitioner contends that his appellate counsel was ineffective for failing to raise his claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Were the failure to raise the claims on direct appeal petitioner's only default, it would be necessary to address the merits of petitioner's claims, because the cause and prejudice inquiry would merge with an analysis of the merits of petitioner's defaulted claims. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

Here, however, even assuming that petitioner could establish cause to overcome his first procedural default, he cannot establish cause to overcome his second procedural default–that is, his failure to file an a timely appeal to the Michigan Supreme Court with respect to his motion for relief from judgment. At this stage of the proceedings, petitioner had no constitutional right to counsel, and thus petitioner cannot establish cause by the absence of such counsel on his motion for relief

from judgment. *See Coleman*, 501 U.S. at 752; *Ritchie v. Eberhart*, 11 F.3d 587, 591-92 (6th Cir. 1993); *Gentry v. Trippett*, 956 F. Supp. 1320, 1326 (E.D. Mich. 1997). Nor can he rely on the fact that he was proceeding *pro se* in his second motion for relief from judgment. A petitioner's "pro se status and his corresponding lack of awareness and training on legal issues do not constitute adequate cause" to excuse a procedural bar. *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991); *see also*, *Haley v. United States*, 78 F.3d 282, 285 (7th Cir. 1996); *McCowin v. Scott*, 67 F.3d 100, 101-02 (5th Cir. 1995); *Charron v. Gammon*, 69 F.3d 851, 859 (8th Cir. 1995); *Lewis v. United States*, No. 96-3092, 1997 WL 49028, at *3 (6th Cir. Feb. 4, 1997) (per curiam). Thus, petitioner cannot establish cause to overcome his procedural default.

        3.     *Actual Innocence*

Petitioner can also have his defaulted claims considered on the merits if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation omitted). As the Supreme Court has explained, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Thus, "the fundamental miscarriage of justice exception . . . is limited to cases where the petitioner can make a persuasive showing that

he is actually innocent of the charges against." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *accord Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002); *Turner v. Jabe*, 58 F.3d 924, 931-32 (4th Cir. 1995); *see also*, *Schlup*, 513 U.S. at 321-22. It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id*. at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"); *House v. Bell*, 547 U.S. 518, 537 (2006) (same).

Here, petitioner has not presented the type of evidence necessary to establish his actual innocence. In support of his claim, he presents an affidavit by Antoine Green. Green avers that he was codefendant Barker's cell mate, and that Barker informed him that neither petitioner nor codefendant Johnson were the men who perpetrated the robberies with Barker. Green's affidavit reflecting Barker's hearsay statement to him is not the type of reliable evidence necessary to meet the high hurdle erected by the actual innocence exception. *See Knickerbocker v. Wolfenbarger*, 212 Fed. Appx. 426, 433 (6th Cir. 2007) (affidavit of codefendant's cell mate recounting codefendant's statement that petitioner was not involved in crime insufficient to establish actual innocence); *cf. Herrera*, 506 U.S. at 417 (hearsay insufficient to establish actual innocence). Further, there was significant evidence of petitioner's guilt presented at trial. Upon arriving at the scene, the police immediately arrested Barker and observed the two other perpetrators fleeing.

Petitioner was found hiding in the area to which the other perpetrators had fled, and no other individuals (apart from codefendant Johnson) were found in the area. Petitioner's shoes were consistent with shoe prints taken from the scene of the robberies, and DNA found in a red bandana of the type worn by one of the robbers and recovered along the escape route of the perpetrators was a statistical match to petitioner. In light of this strong circumstantial evidence of petitioner's guilt Green's affidavit, providing only hearsay evidence and sworn to years after the fact, is insufficient to establish petitioner's actual innocence.

D. *Recommendation Regarding Certificate of Appealability*

1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

13

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

Here, if the Court accepts my recommendation the Court should likewise conclude that its procedural default determination is not reasonably debatable among jurists of reason. Leaving aside petitioner's default in failing to raise his claims on direct appeal, it is clear that petitioner's failure to file a timely appeal to the Michigan Supreme Court in the postconviction proceedings constitutes a procedural bar. It is also beyond debate that petitioner cannot establish cause to overcome this default, because he had no constitutional right to counsel at this stage of the proceedings. Finally, it is not reasonably debatable that petitioner is unable to establish his actual innocence. The hearsay evidence offered by petitioner lacks probative value in light of the evidence against petitioner at trial, and does not constitute the type of new, reliable evidence, such as scientific evidence or trustworthy eyewitness accounts, which is necessary to show actual innocence. Accordingly, the Court should deny petitioner a certificate of appealability.

E. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims are barred by his procedural default in the state courts, and that no exception to the procedural default doctrine allows consideration of petitioner's claims. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this

15

recommendation, the Court should also deny petitioner a certificate of appealablity.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 3/15/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail and to Freddie Williams at Chippewa Correctional Facility on March 15, 2010.
>
>       s/Eddrey Butts